NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| SMITH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil No. 19-20682 (RBK) |
| v. | : | |
| | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Smith's Appeal (Doc. No. 1) from the final decision of the Commissioner of the Social Security Administration denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income under Title II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. For the reasons set forth below the Commissioner's decision is **AFFIRMED**.

## I.      BACKGROUND

### A.  Procedural Background

On November 20, 2015, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income, alleging his disability began on December 30, 2013. (Doc. No. 8-3, R. at 15). Plaintiff's claims were denied on March 29, 2016 and upon reconsideration on June 30, 2016. (*Id.*). On August 11, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (*Id.*). The hearing was held on November 6, 2018, at which Plaintiff and a vocational expert ("VE") testified. (*Id.*). The ALJ issued an unfavorable decision on December 18,

2018. (*Id.* at 28). Plaintiff requested a review of the ALJ's decision by the Appeals Council, which

the Appeals Council denied on January 29, 2019. (*Id.* at 1–6). As such, the ALJ's decision became

the final decision of the Commissioner and Plaintiff now appeals this determination.

## II.   LEGAL STANDARD

### A.  Sequential Evaluation Process

In order to receive benefits under the Social Security Act ("SSA"), the claimant must be

disabled within the meaning of the Act. The Commissioner applies a five-step evaluation process

to make this determination. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing

his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d

Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity"

for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he

has a "severe medically determinable physical and mental impairment" that lasted for a continuous

period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third,

either the claimant shows that his condition was one of the Commissioner's listed impairments,

and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. §

404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must

assess the claimant's residual functional capacity ("RFC"), and the claimant must show that he

cannot perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the

claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777

F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work

exists that the claimant can perform based on his RFC, age, education, and work experience. 20

C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B.  Review of the Commissioner's Decision

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. §405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.    FACTUAL BACKGROUND

### i.  Plaintiff's History

Plaintiff was born in 1970 and was under fifty years old at the time of the ALJ's decision. (R. at 225, 27–28). He earned a high school diploma in 1989 and worked as a union laborer and construction worker. (R. at 50, 243, 261). Plaintiff lives with his father and stepmother. (R. at 46). He testified that he helps his father with shopping but noted it had been two years since he had last done so. (R. at 56). He usually watches TV, reads, or walks during the day. (R. at 57). When he takes a walk, it is down the driveway, which is about 1,000 feet. (R. at 58). He testified that he does not walk the full 1,000 feet at once as he needs to take breaks to catch his breath and walks with a limp. (R. at 58). Plaintiff further testified he has no problem driving, but also wrote on his Function Report that "I am unable to operate a vehicle properly due to my condition." (R. at 52, 295). He is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. (R. at 295).

Plaintiff continued in his occupation as a union laborer until the onset of his alleged disability on December 30, 2013. (R. at 243). The alleged disability is caused by a variety of physical ailments including diabetes, sarcoidosis, and degeneration of and a fracture in his thoracic spine. (R. at 45). (R. at 45). He reports having "shooting pains throughout my back, through my buttocks, from" the herniated disc in his back and that this causes him to limp. (R. at 59). He also contends he cannot sit for more than 20 minutes at a time without suffering from back pain. (R. at 58). His sarcoidosis causes shortness of breath, dizziness, and chest pain. (R. at 47, 51). Plaintiff uses a nebulizer and rescue inhaler to alleviate the breathing issues that accompany his sarcoidosis and takes a muscle relaxer for his back pain. (R. at 47, 51, 55).

In addition to these physical difficulties, Plaintiff also allegedly suffers from anxiety, panic attacks, and depression. He testified that his depression is better now because he is living with his daughter and grandchildren. (R. at 60). He also testified that he has panic attacks at night, and it is like "something is sitting on my chest, a weight." (R. at 61). Plaintiff does not take any medication to treat his anxiety or depression. (R. at 62). However, at one point he was prescribed anaprazalom, but does not take it anymore. (*Id.*).

There are also indications of drug-seeking behavior in Plaintiff's medical records, which were addressed during the hearing in front of the ALJ. The ALJ and Plaintiff's attorney indicated that his medical records reflect that he would go to the emergency room in order to obtain narcotics, specifically oxycodone. (R. at 45, 48). Plaintiff testified he did not have any substance abuse issues before he was placed in a medically induced coma. (R. at 48). He also testified that he has never been prescribed methadone nor has he been to a methadone clinic. (R. at 48–49). Plaintiff further testified he has not used any narcotic, like oxycodone, in years (R. at 49).

### ii.   Relevant Medical History

A number of medical opinions and treatment records are in the administrative record. Only those relevant to the current appeal are discussed below.

### 1.   Generally

Plaintiff started complaining about lower back pain as early as October 3, 2012. (R. at 365). He has allegedly suffered numerous falls and incidents which have exacerbated his back issues. In January of 2014, he reported to the ER after falling on a wood post. (R. at 401). In April of 2015, he slipped in the bathtub and reinjured his back. (R. at 568). In July of 2015, he slipped and fell into a 12-inch hole at work injuring his back. (R. at 558). In December of 2015, he strained his back hanging up Christmas lights. (R. at 623). In August of 2017, as he was dismounting a riding

mower, he stepped into a hole injuring his back and right leg. (R. at 1352). Multiplanar MR

imaging revealed that Plaintiff had a moderate compression fracture of the T12 vertebra that

occurred sometime after March of 2016, a small to moderate-sized central disc herniation to the

left midline L5-81, and bulging disc material L4-5. (R. at 1125–26).

On June 22, 2014, Plaintiff was hospitalized for shortness of breath and back pain. (R. at

377). An abnormal chest x-ray suggested he had sarcoidosis. (*Id.*). This tentative diagnosis was

confirmed by a lung biopsy. (*Id.*). However, a mistake occurred during the biopsy resulting in a

need to place the Plaintiff in a medically induced coma for several days so surgical repairs could

be completed. (*Id.*). He ultimately recovered and was sent home with medication and oxygen. (R.

at 397).

### 2.  Non-Examining State Agency Psychologists Dr. Adams and Dr. Turhan

On March 24, 2016, Dr. Carol L. Adams, a non-examining state agency psychologist,

reviewed the record and opined that Plaintiff had both understanding and memory limitations

and sustained concentration and persistence limitations. (R. at 90–91). Dr. Adams rated

Plaintiff's ability to understand and remember detailed instructions as "moderately limited," and

explained this meant Plaintiff could "understand and remember simple, 1 and 2 step

instructions." (*Id.*). Similarly, she opined that Plaintiff was "moderately limited" in the area of

sustained concentration and persistence because he had difficulty maintaining attention and

concentrating for extended periods and carrying out detailed instructions. (*Id.*). She explained

this impediment limited him to carrying "out simple, 1 and 2 step instructions with adequate

attn./conc." (*Id.*). She concluded that Plaintiff's "impairments are severe but [did] not meet or

equal" the requirements in paragraph B or C of the listing. (R. at 102). On reconsideration, Dr.

Turhan Floyd, a non-examining state agency psychologist, reviewed the record and affirmed Dr. Adam's initial decision. (R. at 124).

### 3.   Treating Pulmonologists Dr. Watson and Dr. Morley

One June 22, 2016, Dr. Marcus Watson, D.O., reviewed the record and determined Plaintiff had extreme physical limitations such that he could only sit, stand, and walk 30 minutes each day during an 8-hour workday. (R. at 1108). He left blank the portion of the report that required him to identify the medical findings which supported this conclusion. (*Id.*). He also determined that Plaintiff could never be exposed to dust, odors, fumes, and pulmonary irritants. (R. at 1111). On October 24, 2018, Dr. Thomas F. Morley, D.O., issued an identical opinion. (R. at 1336–1340). He also left blank the portion of the report that required him to identify the medical findings which supported his conclusion. (R. at 1336).

### 4.   Non-Examining State-Agency Physician Dr. Coleman and Dr. Shubeck

On March 24, 2016, state agency physician, Dr. Gary Coleman, M.D., reviewed the record and determined that Plaintiff could perform a range of "light work," including that he could stand and/or walk for 6 hours in an 8 hour day, sit for 6 hours in an 8 hour day, occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, but avoid moderate exposure to fumes, odors, gases, poor ventilation. (R. at 88–90). On June 30, 2016, state agency physician, Dr. Caroline Shubeck, M.D., reviewed the record and reached the same conclusion. (R. at 120–122).

### iii.   The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in gainful activity since December 30, 2013. (R. at 17). At step two, the ALJ found Plaintiff to have the following severe impairments: sarcoidosis, spine disorder, compression fracture, diabetes mellitus, and substance abuse. (R. at

18). The ALJ found that Plaintiff's claims of anxiety, panic disorder, and major depressive disorder were non-severe individually or in combination with any other impairment. (R. at 18). Specifically, with reference to the functional area of concentration, persistence, and maintenance of pace, the ALJ determined that Plaintiff's limitations were mild because he was able to drive, prepare meals, watch television, read, manage funds, and handle his own medical care. (R. at 19). Likewise, the record failed to show consistent mention of distracability or the claimant having an inability to complete testing that assessed his concentration and attention. (*Id.*). With respect to the medical opinions of Dr. Adams and Dr. Floyd, the ALJ found they had substantial weight overall but their determination that Plaintiff had moderate limitations were unpersuasive because of the reasons discussed above. (R. at 20).

At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of a list impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20). The ALJ then constructed Plaintiff's residual functional capacity, finding that he was able to perform:

> sedentary work (as defined in 20 C.F.R.  404.1567(a) and 416.967(a)) except the claimant can climb ramps and stairs occasionally; but, can never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop and crouch; but can never kneel or crawl. The claimant can never work at unprotected heights, with hazardous machinery, or with concentrated humidity and wetness. He can never work with concentrated dust, odors, fumes or pulmonary irritants. The claimant can never work in extreme color or extreme heat. The claimant is limited to unskilled work.

(R. at 21).

In making this determination, the ALJ found the Plaintiff's medically determinable impairments could have caused his symptoms, but that his allegations as to the nature, intensity, and limiting effects of these symptoms was not supported by the record. (R. at 22). Specifically, the ALJ credited Plaintiff's allegations that his sarcoidosis, diabetes, and back injuries could cause his symptoms, but did not agree with Plaintiff's contention that his impairments "resulted

in limitations such as an inability to walk more than 500 feet at a time before stopping, having a reduced ability to lift, stand, and sit, and a generally reduced ability to initiate and sustain activities." (R. at 21).

The ALJ explained that the severity of Plaintiff's claimed symptoms were seriously undercut by his inconsistent statements regarding his drug use because it was unclear when the "claimant was making endorsements of pain for the purposes of getting medication versus making genuine reports." (R. at 25). For instance, Plaintiff indicated he had no substance abuse issues prior to 2014, but in March of 2009, an insurance company sent a letter to a treating provider indicating that Plaintiff had "been getting Rx's for narcotics from multiple doctors for the past few months. The list . . . had over 20 Rx's for narcotics and they were written by over 20 different doctors from different hospitals and emergency departments." (R. at 508). Likewise, in 2013, Plaintiff's wife and daughter indicated to one of his providers that he was using heroin. (R. at 350). Plaintiff also testified that he stopped abusing drugs sometime in 2016, but in March of 2017, Plaintiff reported to the doctor with symptoms of diarrhea and vomiting; during the intake, he repeatedly stated he needed Xanax and "would buy them off the street if he has to." (R. at 1355). Only five months later, Plaintiff went to a follow up visit after reporting to the emergency room and Dr. Lisa Kunkle noted the emergency room records showed he left "when ER would not give him an injection of dilaudid." (R. at 1352).

The ALJ further explained that Plaintiff's daily activities were not limited to the extent one would expect given his complaints. (R. at 25). Plaintiff appeared to be independent in his self-care, "completes many activities . . . such as cleaning, shopping, and cooking albeit with some general restrictions depending on the intensity of his symptoms on a given day," and retains the ability to drive. (R. at 25). Similarly, the ALJ noted the Plaintiff's relatively

conservative treatment and unremarkable examinations undermined the claimed severity of this

symptoms. (R. at 25–26). Plaintiff had multiple physical examinations showing no abnormal

signs reasonably related to his alleged impairments and he did not regularly endorse the same

specific functional work-related loss to his medical providers. (R. at 25–26).

Because of the Plaintiff's RFC, the ALJ concluded at step four that he was unable to return

to his past work as an iron worker or groundskeeper. (R. at 27). Finally, at step five, the ALJ

determined, based on the vocational expert's testimony, there were jobs that existed in significant

numbers in the national economy that Plaintiff could perform. (R. at 28). Specifically, when the

ALJ presented the hypothetical to the vocational expert and inquired whether a significant number

of jobs existed in the national economy that Plaintiff could perform the expert responded:

> VE: I have three job titles. First job title I have is document preparer, 249.578-018. Exertion
> is sedentary, SVP 2, unskilled. Employment numbers for this DOT code nationally, 46,
> 541. Next job title is addresser, 209.587-010. The exertion is sedentary, SVP 2, unskilled.
> Employment numbers for this DOT code, 5,398. And the next job title is table with a T
> worker, 739.687-182. Exertion sedentary, SVP 2, unskilled. Employment numbers for this
> DOT code, 2864.
>
> ALJ: Okay. And is that testimony consistent with the DOT
>
> VE: Yes.
> (R. at 66). On cross-examination, counsel for Plaintiff questioned the vocational expert

about whether document preparers perform their tasks differently today than they did in 1991:

> ALJ: So what she's asking is not that they're preparing the brochures or the documents but
> how they're doing it. Do they do it the same way that they did it back in 1991?
>
> VE: I can't answer that.

(R. at 69). Ultimately, the ALJ found Plaintiff not disabled. (R. at 28).

## IV.   DISCUSSION

On appeal, Plaintiff raises a number of challenges to the Commissioner's decision,

specifically: (1) substantial evidence did not support the ALJ's finding Plaintiff could work one of

the listed occupations; (2) the ALJ failed to obtain regional job-incidence data to support the step five decision; (3) the ALJ failed to provide legally adequate reasons for rejecting the treating physician's opinion; (4) substantial evidence did not support the ALJ's determination that Plaintiff could be exposed to concentrated pulmonary irritants; (5) substantial evidence did not support the ALJ's rejection of the two non-examining psychologists opinions that Plaintiff was limited to one and two step instructions; and (6) substantial evidence did not support the ALJ's construction of the RFC because she relied on her own lay opinion instead of medical opinions. Each argument will be addressed in turn.

### A.  Alleged Step Five Errors:

#### i.  Whether Substantial Evidence Supported the ALJ's Finding that Plaintiff Could Work One of the Listed Occupations

Plaintiff contends the ALJ's finding that he could work as a document preparer is not supported by substantial evidence because the ALJ did not acknowledge, evaluate, and obtain a reasonable explanation for the apparent conflict between the vocational expert's testimony and the DOT. More specifically, Plaintiff notes that on cross-examination, the vocational expert testified she did not know if document preparers perform their tasks differently today than they did in 1991. This admission, according to Plaintiff, conflicts with the DOT and therefore required the ALJ to obtain a reasonable explanation. Lastly, Plaintiff contends this alleged error by the ALJ was harmful because the ALJ determined there were significant number of jobs in the national economy by aggregating the numbers for all three jobs, instead of making that determination individually.

Because the ALJ's decision that Plaintiff could work as document preparer is supported by substantial evidence, we will not consider whether the other two jobs match Plaintiff's RFC.

*Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 384 (D.N.J. 2013); *see Reed v. Commissioner of Social Security*, 2018 WL 5617549, at \*6 (D.N.J. 2018) (citing *Nalej v. Berryhill*, 2017 WL 6493144, at \*11 (D.N.J. 2017) (citing 20 C.F.R. § 416.966(b)) (explaining that SSA regulations provide that work exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding was sufficient to support the determination that plaintiff was not disabled)).

Plaintiff's arguments are premised on the assumption that the vocational expert's testimony conflicts with the DOT. It is well-settled that the ALJ has an obligation to develop the record during an adjudicative hearing. *Rutherford v. Barnhart*, 399 F.3d 546, 556 (3d Cir. 2005). SSR 00–4p, 2000 WL 1898704 (S.S.A. Dec. 4) was designed to address this obligation and it explains:

> when there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

In its language dealing with "The Responsibility to Ask About Conflicts," the SSR states:

> when a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> > ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> >
> > if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Here, when the vocational expert provided testimony about the requirements of the jobs, the ALJ asked if that evidence conflicted with the information provided in the DOT:

12

> VE: I have three job titles. First job title I have is document preparer, 249.578-018. Exertion is sedentary, SVP 2, unskilled. Employment numbers for this DOT code nationally, 46, 541. Next job title is addresser, 209.587-010. The exertion is sedentary, SVP 2, unskilled. Employment numbers for this DOT code, 5,398. And the next job title is table with a T worker, 739.687-182. Exertion sedentary, SVP 2, unskilled. Employment numbers for this DOT code, 2864.
>
> ALJ: Okay. And is that testimony consistent with the DOT
>
> VE: Yes.

(R. at 66). Thus, the ALJ fulfilled her obligation by inquiring whether there was any conflict between the vocational expert's testimony and the DOT. Moreover, the inconsistency that Plaintiff points to is not an inconsistency *with the DOT*. The fact that the VE does not know whether a document preparer performs the job differently today than in 1991 does not mean her testimony is inconsistent with the DOT. The VE is allowed to rely on the DOT even if it is inconsistent with its more modern counterpart O*NET. *Junod v. Berryhill*, No. CV 17-1498, 2018 WL 5792214, at *4 (W.D. Pa. Nov. 5, 2018). Plaintiff's argument is essentially that substantial evidence does not support the ALJ's finding because the vocation expert relied on outdated descriptions of the occupations the Plaintiff could perform. It is not for this Court to reform the methodology that the SSA vocational experts use to determine available and appropriate jobs in the national economy. *Sanabria v. Comm'r of Soc. Sec.*, No. 2:15-CV-8963 (CCC), 2017 WL 436253, at *4 (D.N.J. Jan. 31, 2017); *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 1:16-CV-05691-NLH, 2017 WL 4316880, at *8 (D.N.J. Sept. 28, 2017). Therefore, this Court does not find that the ALJ's reliance on the VE's testimony to be in error.

The second error raised by Plaintiff is uncompelling. Plaintiff maintains the ALJ combined the number of jobs for each of the occupations to determine there existed a significant number of jobs in the national economy that Plaintiff could perform. This inference is implausible. The ALJ stated "[b]ased on the testimony of the vocational expert, the undersigned concludes that . . . the

13

claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 28). There is no indication the ALJ combined the number of jobs for each occupation to make this determination. Moreover, it cannot be denied that 46,541 jobs for the position of document preparer is clearly a "significant number." *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (concluding that "the testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers."). Accordingly, even assuming the ALJ erred as Plaintiff contends, the error was harmless. *See also Rutherford v. Barnhart*, 399 F.3d 546, 553–55 (3d Cir. 2005) ("[A] remand is not required here because it would not affect the outcome of the case").

### ii.   Failure to Obtain Regional Data

The next error Plaintiff assigns to the ALJ is her failure to consider regional job-incidence data to support her decision that a significant number of jobs exist in the national economy. This argument fails because numerous courts within this circuit and other circuits have already rejected it. *Carey v. Colvin*, No. CIV.A. 13-360E, 2015 WL 143882, at *4 (W.D. Pa. Jan. 12, 2015) (finding the ALJ did not commit an error by failing to discuss the number of jobs in the region at step five); *Brininger v. Berryhill*, No. 3:16-CV-00903, 2017 WL 3634187, at *15 (M.D. Pa. Aug. 7, 2017), report and recommendation adopted, No. 3:16CV903, 2017 WL 3632496 (M.D. Pa. Aug. 23, 2017) (noting the plaintiff's focus on the ALJ's failure to discuss regional jobs was misplaced because the relevant inquiry is whether work exists in the national economy); *see also Sylvia M. v. Saul*, No. 3:19CV428 (DJN), 2020 WL 5047066, at *4 (E.D. Va. Aug. 26, 2020) (citing cases that supported the proposition that testimony regarding the availability of jobs nationally satisfies the Act and its regulations).

### B.  Alleged Step Four Errors: Residual Functional Capacity

14

### i.   Rejection of Treating Physician's Opinion

Plaintiff argues substantial evidence does not support the ALJ's residual functional capacity assessment because she failed to provide legally adequate reasons for rejecting the treating physicians' findings that Plaintiff could never tolerate exposure to dust, odors, fumes, and pulmonary irritants. Likewise, Plaintiff contends the ALJ improperly rejected the non-treating physicians' determination that Plaintiff must avoid moderate exposure to dust and pulmonary irritants. Even assuming the ALJ erred in rejecting these doctors' opinions, such an error is harmless because the position of document preparer does not require exposure to environmental conditions such as dust, odor, fumes, etc. *See* Document Preparer, DOT # 249.587-018, 1991 WL 672349. *Kenyon v. Comm'r of Soc. Sec.*, No. 16-cv-0260, 2017 WL 2345692, at *5 (N.D.N.Y. May 30, 2017) ("any error to include environmental limitations in the RFC determination would be harmless error because the positions identified by the vocational expert do not require exposure to atmospheric conditions such as dust, fumes, and gases").

### ii.   Rejection of Findings by Two Non-Treating Psychologists

The ALJ's construction of the RFC limited Plaintiff to "unskilled work." Plaintiff maintains this finding is not supported by substantial evidence because the ALJ did not provide legally adequate reasons for rejecting the psychologists' determination that Plaintiff was limited to one and two step instructions. This error is harmful, according to Plaintiff, because there is no evidence in the record which shows the job of document preparer is limited to simple one and two step instructions. The Commissioner, on the other hand, contends the ALJ found that Plaintiff only had a mild limitation in concentration, persistence, or pace and that this was supported by substantial evidence.

It is well settled that the final responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner, and even "treating source opinions . . . are never entitled to controlling weight or special significance." *Breen v. Comm'r of Soc. Sec.*, 504 F. App'x 96, 99 (3d Cir. 2012) (citing SSR 96–5p, 1996 WL 374183 (July 2, 1996)). As noted above, the residual functional capacity is defined as the most a claimant can do in a work setting despite the physical and mental limitations resulting from all of her impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ must use all relevant evidence in the record to make the RFC assessment.

In reviewing the record to make the RFC assessment, the ALJ must take into account all the medical opinion evidence along with all other relevant evidence in the record, 20 C.F.R. § 404.1527(b), and must allocate weight to each medical opinion upon which it relies. *Weidman v. Colvin*, 164 F. Supp. 3d 650, 662 (M.D. Pa. 2015). The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Only licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a) & 416.913(a).

Any medical opinion from an acceptable medical source, unless it is designated a controlling treating medical opinion, must be analyzed according to factors set forth in 20 C.F.R. § 404.1527(c). These factors include the examining and treating relationship; the length and frequency of the relationship; the extent and nature of the relationship; the amount of objective

16

medical evidence supporting the opinion; consistency with the entire record; specialization of the medical professional; and other factors that tend to support or contradict an opinion. *Id.*

Here, the ALJ determined that the opinions of the non-examining psychologists' Dr. Adams and Turhan were entitled to substantial weight overall. However, the ALJ discounted those portions of their opinions that concluded Plaintiff had moderate limitations in concentration and persistence thereby supporting a finding of severe mental impairment because they were inconsistent with the entire record. First, the ALJ noted that while Plaintiff claimed he had limitations in concentrating, completing tasks and maintaining a regular work schedule, he testified that "he is also able to drive, prepare meals, watch television, read, manage funds, and handle is own medical care." The ALJ further noted that "the record fails to show consistent mention of distractibility or the claimant having an inability to complete testing that assesses concentration and attention." These are proper considerations for the ALJ to take into account when deciding what weight to give medical opinions. *Russo v. Astrue,* 421 F. App'x 184, 191 (3d Cir. 2011) (finding the ALJ was not required to give a doctor's opinion controlling weight because it was inconsistent with other evidence in the record and the claimant's daily activities); *Tucker v. Saul*, No. 2:18-CV-13522, 2020 WL 6255420, at *17 (D.N.J. Oct. 23, 2020) (finding the record evidence supported the ALJ's decision to reject the limitation of adjustment disorder with depressed mood because there were no other diagnoses of any depressive disorder and no treatment in the record for this condition). And the record supports the ALJ's repudiation of the psychologists' conclusions as it is utterly devoid of any objective medical evidence supporting their determination that Plaintiff had impairments in concentration and distractibility. Thus, the ALJ's determination that Plaintiff had, at most, mild limitations is supported by substantial evidence.

### iii.   Whether the ALJ Improperly Played Doctor

17

Plaintiff contends the ALJ impermissibly played the role of doctor when she formulated the residual functional capacity because she relied, in part, on her own judgment, rather than a physician's. This argument is based on the fact that the ALJ did not cite any medical opinion or medical authority for her conclusion that Mr. Smith "regularly lacked signs of atrophy, sensory loss, or weakness, which likely would have been consistently present if the claimant had the degree of pain and immobility alleged." (R. at 26). Plaintiff then argues that this error is harmful because she relied on her lay medical opinion to reject the opinions of two treating physicians. The Commissioner argues the ALJ did not simply cite to Plaintiff's lack of atrophy, sensory loss, or weakness alone and find that he could perform a full range of exertional work. Rather, the Commissioner correctly points out that the ALJ discussed that Plaintiff's daily activities, his largely conservative treatment, the fact that he made inconsistent statements to his healthcare providers, the conflicting evidence in his treatment notes, and the medical opinion evidence to determine that Plaintiff was limited to sedentary work.

Plaintiff's argument fails because she does not explain how this error is harmful and the ALJ's construction of the RFC is supported by substantial evidence. First, the Plaintiff has not met his burden of demonstrating how this error was harmful. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). His mere assertion that "this is harmful because the ALJ relied on her lay medical judgment to reject the opinions of two treating physicians who opined that Mr. Smith was much more limited than the ALJ found" is unavailing. It does not explain how this may have impacted Plaintiff's outcome. This deficiency alone is enough for us to find no basis to remand the case. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005) ("Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond

18

an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand. . . .").

Second, the ALJ's determination that Plaintiff is limited to sedentary work is supported by substantial evidence. The quote cherry picked by Plaintiff was only a part of the ALJ's reasoning for limiting Plaintiff to sedentary work. As the Commissioner correctly noted, the ALJ's determination that Plaintiff's symptoms were not as severe as he claimed was based on Plaintiff's daily activities, the relative conservative treatment he received, evidence in the record, unremarkable medical examinations, and the medical opinions of the treating and non-examining doctors. For instance, the ALJ noted that while Plaintiff indicated he could not "walk more than 500 feet at time before stopping" and had "a reduced ability to lift, stand, and sit," he also testified that he "completes many activities of daily living such as cleaning, shopping, and cooking." Similarly, the ALJ explained that Plaintiff's allegations lacked credibility because he "did not regularly endorse having the same specific functional work related loss to his medical providers" and he had "multiple physical examinations showing no abnormal signs reasonably related to his alleged impairments."

For similar reasons, the ALJ also gave more weight to the medical consultants' opinions than the treating physicians. Specifically, the ALJ rejected the treating physicians' opinion that Plaintiff could not stoop, sit, stand, or walk for more than a combined total of one and a half hours because Plaintiff had multiple examinations that were completely unremarkable, there was no evidence in the record corroborating this conclusion, and the opinion did not account for contemporaneous medical evidence which showed Plaintiff had greater functioning. The medical consultants' opinions, on the other hand, were more consistent with the record as they accounted for the majority of Plaintiff's unremarkable physical examinations by concluding he could perform

19

an "eroded form of light exertional work." Thus, even if we were to assume that the ALJ erred by substituting her lay opinion for that of the physicians', the ALJ's determination is still supported by substantial evidence given that she did not rely solely on her amorphous impression to find that Plaintiff was limited to sedentary work. *Garcia v. Comm'r of Soc. Sec.*, 94 F. App'x 935, 941 (3d Cir. 2004) (concluding the ALJ's conclusion was supported by substantial evidence because he did not disregard a medical opinion based solely on his own impressions but also relied on doctor's reports); *Zelenka v. Colvin*, No. CIV.A. 11-1442, 2013 WL 941823, at *4 (W.D. Pa. Mar. 11, 2013) (same).

## V.      CONCLUSION

For the foregoing reasons, the Commissioner's determination is **AFFIRMED**. An Order follows.

Dated: __12/16/2020_____                                s/ Robert B. Kugler_____
                                                                                ROBERT B. KUGLER
                                                                                United States District Judge